# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| ROYAL SPURLARK, individually and on behalf of other similarly situated.<br><br>                Plaintiff,<br>v.<br><br>DIMENSION SERVICE CORPORATION, PELICAN INVESTMENT HOLDING, LLC d/b/a AAP and GUSTAV RENNY<br><br>                Defendants. | Case No.: 2:21-cv-3803<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES, STATUTORY DAMAGES, AND REQUEST FOR INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

### Preliminary Statement

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff Royal Spurlark brings this action under the TCPA alleging that Defendant Dimension Service Corporation ("Dimension"), hired Pelican Investment Holding, LLC d/b/a AAP ("AAP"), operated by Gustav Renny, who made automated telemarketing calls for purposes of promoting their goods and services without his prior express written consent.

3. The calls were also sent to individuals that were listed on the National Do Not Call Registry, including Mr. Spurlark.

4. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

5. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

6. Plaintiff Royal Spurlark resides in Pennsylvania.

7. Defendant Dimension Service Corporation is an Ohio corporation headquartered in this District.

8. Defendant Pelican Investment Holding, LLC d/b/a AAP is a Florida limited liability company.

9. Defendant Gustav Renny is a Florida resident.

**Jurisdiction & Venue**

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11. The Court has personal jurisdiction over Dimension Service Corporation because their principal place of business is in this District.

12. The Court has personal jurisdiction over Pelican Investment Holding, LLC d/b/a AAP because they signed an agreement with Dimension subject to the laws of the State of Ohio and had a reasonable expectation that any disputes relating to that agreement, including the telemarketing calls made for Dimension under that agreement would be litigated here.

- 3 -

13. The Court has personal jurisdiction over Gus Renny because he has personally participated in the conduct and negotiations of the agreement requiring disputes with respect to the AAP agreement to be litigated in Ohio. Mr. Renny had direct dealings with Dimension in Ohio regarding the telemarketing at issue and indeed is the only individual that has been identified by Dimension as having worked with them on this telemarketing campaign orchestrated by Dimension in Ohio.

14. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District.

## TCPA Background

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

**A.   The TCPA prohibits pre-recorded message calls to cellular telephones.**

16. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

17. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

18. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

19. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**B.    The TCPA prohibits calls to numbers on the National Do Not Call Registry.**

20. The TCPA also prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

21. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

22. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

23. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

C.     **The TCPA Permits Individual Liability**

24.     Under the TCPA, an individual such as Mr. Renny, may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

*See* 47. U.S.C. § 217 (emphasis added).

25.     When considering individual officer liability under the TCPA, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

26. Mr. Renny has been the subject of a number of TCPA lawsuits related to his participation in telemarketing related to vehicle warranty goods or services. *See e.g. Day v. Nat'l Car Cure Ltd. Liab. Co.,* No. 8:20CV104, 2020 U.S. Dist. LEXIS 200198 (D. Neb. Oct. 28,

2020); *Cunningham v. Assured Auto Grp.,* No. 4:20-CV-141, 2021 U.S. Dist. LEXIS 56888 (E.D. Tex. Mar. 2, 2021).

27. Despite these lawsuits, Mr. Renny continued with his telemarketing conduct in violation of the TCPA.

28. Mr. Renny personally participated in the actions complained of by (a) participating in the selection of the phone numbers that would be called; (b) working on the scripting that would be used on the call (c) authorizing the vendor, equipment and pre-recorded message that would be used to make the calls.

29. Indeed, Dimension's discovery responses in this lawsuit have only indicated Mr. Renny's involvement from AAP and not any other individuals as having directed AAP's conduct.

**Factual Allegations**

30. Dimension sells vehicle service warranty contracts.

31. To sell these services, Dimension relies on telemarketing conducted by third parties, including AAP.

32. This telemarketing includes the use of pre-recorded messages.

33. While such automated technology may save time and money for Dimension's telemarketing efforts, it violates the privacy rights of the Plaintiff and putative class.

Calls to The Plaintiff Spurlark

34. Plaintiff Spurlark is a "person" as defined by 47 U.S.C. § 153(39).

35. Mr. Spurlark's telephone number, (301) 452-XXXX, is registered to a cellular telephone service.

36. Mr. Spurlark's telephone number was on the National Do Not Call Registry, and had been for more than 30 days, when it was called by Dimension.

37. Mr. Spurlark's telephone number is primarily used for personal purposes and is not associated with a business.

38. Mr. Spurlark received multiple pre-recorded calls from AAP for Dimension, including in August of 2021.

39. Mr. Spurlark ignored a series of calls following listening to the generic pre-recorded message regarding warranties.

40. The company was not identified in the pre-recorded message.

41. Finally, to identify the calling party, Mr. Spurlark engaged the telemarketer on September 3, 2021.

42. After responding to the call, Mr. Spurlark handed the phone to Matthew Silverman, a colleague of his who was with him.

43. Mr. Silverman provided his information to the telemarketer, who promoted Dimension's warranty services.

44. Following the conversation, Mr. Silverman received an e-mail from AAP confirming the call, including AAP's logo and trademark.

45. Shortly after that, Mr. Silverman was sent a policy packet for Dimension.

46. The "seller information" is for AAP, providing AAP's name and address.

47. The call invaded Plaintiff's privacy and intruded upon his right to seclusion.

48. Plaintiff did not consent to receive Defendants' calls prior to the receipt of the unsolicited conduct.

**Dimension's Liability for AAP's Calling Conduct**

49. For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

50. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

51. In that ruling, the FCC instructed that sellers such as Dimension may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

52. AAP was contractually required to promote Dimension services on their telemarketing calls in order to make sales, and did so, as they did with the Plaintiff.

53. Moreover, Dimension maintained interim control over AAP's actions.

54. AAP only called telephone numbers in approved geographic regions.

55. Dimension was aware that AAP had engaged in pre-recorded telemarketing prior to the call to Mr. Spurlark.

56. Dimension had previously received correspondence alleging that AAP was engaging in pre-recorded calling conduct on their behalf.

57. Indeed, this lawsuit, while being pursued by Roman Waldron, the prior plaintiff, had alleged pre-recorded telemarketing conduct that was revealed to be engaged in by AAP.

58. However, Dimension claimed earlier in this litigation that AAP is its agent, and a settlement agreement signed in connection with pre-recorded telemarketing conduct by the prior plaintiff applied equally to them because of this relationship.

59. Despite this, Dimension still continued its relationship with AAP.

60. AAP was made aware of this lawsuit, and Dimension's continued desire to keep working with them, and continued its pre-recorded calling conduct.

61. As a result, the calls to Mr. Spurlark, and other individuals, occurred.

## Class Action Allegations

62. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

63. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23:

**Robocall Class:** All persons within the United States: (1) to whose cellular telephone number (2) AAP or Dimension (or an agent acting on behalf of AAP or Dimension) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff.

**AAP or Dimension National Do Not Call Registry Class**: All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of AAP or Dimension (3) within a 12-month period, (4) from four years prior to the filing of the Complaint.

64. The Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

65. Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy.

66. This Class Action Complaint seeks injunctive relief and money damages.

67. The Classes as defined above are identifiable through dialer records, other phone records, and phone number databases.

68. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds in each of the Classes.

69. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim.

70. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

71. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the claims predominate over questions which may affect individual class members because of the uniformity of the telemarketing conduct.

72. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

    (a) whether Dimension is vicariously liable for the conduct of AAP;

    (b) whether multiple telemarketing calls were made promoting the defendants' goods or services to members of the Classes;

    (c) whether the telemarketing calls at issue were made to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

    (d) whether AAP or Dimension made multiple calls to individuals more than 30 days after it had been provided with an instruction to no longer contact such individuals;

    (e) whether Defendants' conduct constitutes a violation of the TCPA; and

    (f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

73. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

74. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or their agents.

75. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227(b)) on behalf of the Robocall Class

76. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

77. The foregoing acts and omissions of AAP or Dimension and/or their affiliates, agents, and/or other persons or entities acting on AAP or Dimension's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class delivering pre-recorded messages.

78. As a result of AAP or Dimension's and/or its affiliates, agents, and/or other persons or entities acting on AAP or Dimension's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

79. If the AAP or Dimension's conduct is found to be knowing or willful, the Plaintiff and members of the Class are entitled to an award of up to treble damages.

80. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting AAP or Dimension and/or its affiliates, agents, and/or other persons or entities acting on AAP or Dimension's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

## SECOND CAUSE OF ACTION
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. 227(c)(5), et seq. and 47 C.F.R. § 64.1200(c))
### on behalf of the AAP or Dimension Do Not Call Registry Class

81. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

82. Defendant AAP or Dimension violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing calls within a 12-month period on Defendant AAP or Dimension's behalf to Plaintiff and the members of the AAP or Dimension National Do Not Call Registry Class while those persons' phone numbers were registered on the National Do Not Call Registry.

83. Defendant AAP or Dimension also violated the TCPA and the Regulations by making, or having its agent make, two or more telemarketing calls within a 12-month period on Defendant AAP or Dimension's behalf to Plaintiff and the members of the AAP or Dimension Do Not Call Class after those individuals had provided their phone number with an instruction to no longer receive calls from AAP or Dimension.

84. As a result of Defendant AAP or Dimension's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and AAP or Dimension National Do Not Call Registry Class members and AAP or Dimension Do Not Call Class members are each entitled to an award of up to $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(c)(5).

85. Plaintiff and AAP or Dimension National Do Not Call Registry Class members and AAP or Dimension Do Not Call Class members are each entitled to an award of treble damages if AAP or Dimension' actions are found to have been knowing or willful.

86.     Plaintiff and AAP or Dimension National Do Not Call Registry Class members and AAP or Dimension Do Not Call Class members are also entitled to and do seek injunctive relief prohibiting AAP or Dimension from advertising its goods or services, except for emergency purposes, to any number on the National Do Not Call Registry in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.     Injunctive relief prohibiting Defendants from making telephone calls advertising their goods or services, except for emergency purposes, utilizing pre-recorded messages or to any number on the National Do Not Call Registry in the future;

B.     As a result of Defendants' negligent, willful and/or knowing violations of 47 U.S.C. 227(c)(5), Plaintiff seeks for himself and each member of the Classes up to treble damages, as provided by statute, of up to $1,500 for each and every violation of the TCPA;

C.     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

D.     Such other relief as the Court deems just and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: November 15, 2021

*/s/ Anthony I. Paronich*
Anthony I. Paronich (*pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com