**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **ROYAL SPURLARK,** individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:21-cv-3803 |
| | : | |
| v. | : | Judge Edmund A. Sargus |
| | : | |
| **DIMENSION SERVICE CORPORATION,** *et al.* | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| | : | |
| Defendants. | : | |

**MOTION OF DEFENDANT DIMENSION SERVICE CORPORATION**
**TO DISMISS AND MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Dimension Service Corporation ("Dimension") respectfully moves to dismiss the First Amended Complaint ("FAC," ECF No. 17) for failure to state a claim upon which relief can be granted. Alternatively, Dimension moves to strike and/or limit the class claims in the FAC, pursuant to Fed. R. Civ. P. 12(f) and 23. A Memorandum in Support of these Motions is attached.

Respectfully submitted,

*/s/ Helen Mac Murray*
Helen Mac Murray (0038782), Trial Attorney
Christopher C. Wager (0084324)
Mac Murray & Shuster LLP
6525 West Campus Oval, Suite 210
New Albany, Ohio 43054
Tel: (614) 939-9955 | Fax: (614) 939-9954
hmacmurray@mslawgroup.com
cwager@mslawgroup.com
*Counsel for Defendant*

## <u>MEMORANDUM IN SUPPORT</u>

Plaintiff fails to plead facts that could allow the Court to plausibly infer that Dimension can be held vicariously liable for the conduct of defendant Pelican Investment Holdings Group, LLC d/b/a AAP ("AAP"), the entity that Plaintiff alleges placed telephone calls to him in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). Plaintiff's FAC omits any facts allowing the Court to infer the existence of an agency relationship. Instead, Plaintiff attempts to cobble together facts suggesting some sort of ratification theory. However, Plaintiff's factual allegations fall short. Nor can Plaintiff establish vicarious liability because the terms of contract between Dimension and AAP (which is referenced in the FAC) preclude a finding of agency. Because further amendment would be futile under these facts, the Court should dismiss the FAC against Dimension with prejudice.

Alternatively, Dimension moves, pursuant to Fed. R. Civ. P. 23(d) and 12(f), for an Order dismissing or striking the class allegations contained in the FAC on the grounds that Plaintiff fails to meet the requirements of Fed. R. Civ. P. 23(b)(2) for purposes of the injunctive relief Plaintiff requests. Lastly, Plaintiff's FAC pleads facts demonstrating that Plaintiff fails to meet the typicality requirement of Fed. R. Civ. P. 23. For these reasons, Dimension moves for an Order striking or dismissing the class claims asserted in the FAC.

## I.    PLED FACTS

Plaintiff alleges that he received multiple calls containing a pre-recorded message from defendant AAP, including in August of 2021, however Plaintiff fails to state the date, times or frequency of these alleged calls. (FAC, ECF No. 17, ¶ 38, PageID#103.) The pre-recorded messages were "generic" and generally contained messages regarding warranties, without identifying any businesses connected to the calls. (*Id*. ¶¶ 39-40.) Plaintiff "engaged the

telemarketer" in some fashion (the FAC does not identify if it was in connection with an inbound pre-recorded call, an outbound call by Plaintiff, or any other circumstance regarding this "engagement"), and handed the phone to a colleague of his, Matthew Silverman, who is not a party to this lawsuit. (*Id*. ¶¶ 41-42.)

Mr. Silverman – not Plaintiff – provided his information to the telemarketer, who then promoted warranty services. (*Id*. ¶ 43.) Subsequent actions by the telemarketer indicated that the seller of the warranty in question was AAP. First, "Mr. Silverman received an e-mail from AAP confirming the call, including AAP's logo and trademark." (*Id*. ¶ 44.) Second, the policy packet sent to Mr. Silverman specifically identified AAP as the seller of the product, including AAP's name and address. (*Id*. ¶ 46.) The telephone call and packet indicated that Dimension is the provider of services sold by AAP. (*Id*. ¶¶ 43, 45.) Plaintiff denies consenting to receive the calls from AAP prior to receiving them. (*Id*. ¶ 48.)

Acknowledging that Dimension did not place a telephone call allegedly in violation of the TCPA, Plaintiff alleges the existence of a contractual relationship between AAP and Dimension, under which AAP engaged in telemarketing to sell Dimension's products. (*Id*. ¶ 52, PageID#105.) The contract referenced by Plaintiff contains several provisions pertinent to Plaintiff's allegations of the existence of vicarious liability (Dec. 16, 2020 Producer Agreement ("Producer Agreement"), attached as Exhibit A.):

- The Producer Agreement establishes an independent contractor relationship and disclaims the existence of an agency relationship: "[AAP] is an independent contractor, and no relationship of principal and agent, employer and employee, partnership, joint venture or otherwise, shall be created between [Dimension] and [AAP]. (Producer Agreement, §4.1.)

- AAP is required to comply with all laws: "[AAP] shall comply with all laws, rules, regulations and licensing requirements pertaining to the sale of Company Programs, and other related products and services in the state(s) where Producer conducts business including but not limited to the "National Do Not Call Registry" maintained by the

Federal Trade Commission." (*Id*. §4.12.)

- AAP is specifically required to comply with the TCPA: "[AAP] shall comply, in all ways, with the requirements of the Telephone Consumer Protection Act (the "TCPA") 47 U.S.C.A. §227, 47 C.F.R. §64.1200…" (*Id*. §4.12(b).)

Ignoring the actual contractual provisions between the parties, the FAC simply concludes that "Dimension maintained interim control over AAP's actions," without pleading any facts that could lead the Court to infer the existence of such interim control. (FAC ¶ 53, PageID#105.) Similarly, the FAC simply concludes that "AAP only called telephone numbers in approved geographic regions." (*Id*. ¶ 54.) However, the Producer Agreement demonstrates that Dimension placed no such geographic limitation. (Producer Agreement, Schedule II.) Last, Plaintiff alleges that Dimension was aware that AAP "had engaged in pre-recorded telemarketing prior to the call to Mr. Spurlark" by virtue of the claims of the prior named-Plaintiff, Roman Waldron. (FAC ¶¶ 55-60.)[1]

Based on the foregoing, Plaintiff asserts two causes of action under the TCPA on behalf of the putative class. First, Plaintiff alleges that AAP's telephone calls violated 47 U.S.C § 227(b), by utilizing pre-recorded voice technology without first obtaining prior express written consent from Plaintiff and other putative class members. (*Id*. ¶ 77, PageID#108.) Second, Plaintiff alleges that AAP placed more than one telemarketing call to Plaintiff and other putative class members listed on the National Do-Not-Call Registry. (*Id*. ¶ 82, PageID#109.)

## II.   PLAINTIFF'S PUTATIVE CLASS DEFNITIONS

Plaintiff seeks to represent two putative classes defined as follows:

> **Robocall Class:** All persons within the United States: (1) to whose cellular telephone number (2) AAP or Dimension (or an agent acting on behalf of AAP or Dimension)

---

[1] The FAC misstates the procedural history of this case by alleging that Dimension previously acknowledged that AAP was serving as its agent. (FAC ¶ 57.) To the contrary, Dimension has consistently argued the lack of an agency relationship and the ability to assert a claim against Dimension under a theory of vicarious liability. (*E.g.*, Rule 26(f) Report of the Parties, ECF No. 10, at PageID#37 ("[Dimension] further asserts that it did not authorize or ratify any alleged violations of the TCPA by AAP, and that [Dimension] cannot be held vicariously liable for AAP's alleged actions.").)

placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff.

**AAP or Dimension National Do Not Call Registry Class**: All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of AAP or Dimension (3) within a 12-month period, (4) from fouryears prior to the filing of the Complaint.

(FAC ¶ 63, PageID#105-06.)

Without citing any supporting facts, Plaintiff contends that although he does not know the exact number of persons in each of the Classes, he reasonably believes the Class numbers to be in the hundreds of each of the Classes. (*Id.* ¶ 68, PageID#106.)  Plaintiff alleges that he and putative class members necessarily suffered concrete harm through an invasion of their privacy. (*Id.* ¶ 65.)  Plaintiff fails to cite to any specific provision of the Rule, however, Plaintiff appears to seek certification of the putative classes pursuant to all subsections of Fed. R. Civ. P. 23(b). (*Id.* ¶¶66-72, PageID#106-07.)

## III.   MOTION TO DISMISS

### A.    Legal Standard

Pleadings cannot consist only of labels and conclusions, formulaic recitations of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  To survive a motion to dismiss for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6), "a plaintiff must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (cleaned up).

### B.    The Court may refer to the contract between AAP and Dimension.

Pursuant to established Sixth Circuit case law, "the court may consider the complaint and … exhibits attached to the defendant's motion to dismiss as long as the exhibits are referenced in the

4

complaint and are central to the plaintiff's claims." *Baker v. Swift Transp. Co. of Ariz., LLC*, Case No. 2:17-cv-909, 2018 U.S. Dist. LEXIS 75961, at *3 (S.D. Ohio May 4, 2018) (citing *Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008)).  "[T]he Sixth Circuit has repeatedly held that such attachments are appropriately included in a motion to dismiss *even when the initial claim never actually identifies the specific document*."  *Arrowood Indem. Co. v. Lubrizol Corp.*, Case No. 1:10 CV 2871, 2011 U.S. Dist. LEXIS 88480, at *10 (N.D. Ohio Aug. 10, 2011) (emphasis added); *see also Williams v. Lasik Inst., LLC*, Case No. 2:20-cv-02402-JPM-tmp, 2021 U.S. Dist. LEXIS 186813, *24-25 (W.D. Tenn. Sep. 29, 2021) ("Courts in this Circuit have elected to consider documents that were central to Plaintiff's claims and fairly implicated by the allegations in the Complaint although not explicitly referenced therein.").

As part of its assertion that Dimension should be held vicariously liable for AAP's outbound calling, the FAC specifically asserts that "AAP was contractually required to promote Dimension services on their telemarketing calls in order to make sales, and did so, as they did with the Plaintiff." (FAC ¶ 52, PageID#105.)  As such, the FAC goes above and beyond the above Sixth Circuit authority by explicitly identifying the contract between AAP and Dimension.  The FAC similarly establishes that the nature of parties' relationship is central to the existence of an agency relationship that, if established, would serve as the basis to vicariously extend liability to Dimension for AAP's actions.  As such, the Court may consider the agreement between Dimension and AAP without converting the present Motion into one for summary judgment.

## C.   Plaintiff has not pled a basis to hold Dimension vicariously liable for the alleged conduct of AAP.

The Sixth Circuit has recognized that, in addition to direct liability under the TCPA, a defendant can be found vicariously liable under federal common law agency principles for a telephone call placed by another entity, including formal agency (i.e., actual authority), apparent authority, or ratification.

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015) (quoting *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (May 9, 2013) ("*Dish Network*")).

> **1.    The FAC fails to plead facts to allow the Court to plausibly infer a formal agency relationship between Dimension and AAP.**

"The classical definition of 'agency' contemplates 'the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *Kahler v. Fid. Mut. Life*, Case No. 5:16CV287, 2018 U.S. Dist. LEXIS 43555, at *5-6 (N.D. Ohio Mar. 16, 2018) (quoting *Dish Network*, 28 FCC Rcd. At 6586-87).  To establish formal agency, Plaintiff must plead _facts_ that demonstrate that Dimension exercised control over AAP's actions: "An essential element of agency is the principal's right to control the agent's actions." *Murray v. Choice Energy, LLC*, Case No. 1:15-cv-60, 2015 U.S. Dist. LEXIS 89913, at *13-14 (S.D. Ohio July 10, 2015) (citing Restatement (Third) of Agency, § 1.01 cmt. f).

"In particular, the power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." *Id*. (cleaned up).  To extend formal agency, the principal must exert control over "the manner and means" of the calling campaign conducted.  *Keating v. Peterson's Nelnet, LLC*, Case No. 1:11 CV 1775, 2014 U.S. Dist. LEXIS 64920, at *15 (N.D. Ohio May 12, 2014) (*aff'd* 615 Fed. App'x 365). The FAC sets forth three factual allegations through which Plaintiff appears to allege the existence of a formal agency relationship.  As set forth below, each allegation fails to permit the Court to plausibly infer the existence of an agency relationship.

First, the FAC alleges a contract through which AAP was required to promote Dimension's services through telemarketing calls.  (FAC ¶ 52, PageID#105.)  However, "[a]n allegation of a beneficial contractual relationship alone is insufficient to establish agency." *Trenz v. Sirius XM*

*Radio, Inc.*, Case No. 15CV0044, 2015 U.S. Dist. LEXIS 180811, at *6 (S.D. Cal. July 13, 2015) (granting motion to dismiss on vicarious liability grounds). In a recently decided case, the plaintiff argued that that a "commercial contractual relationship between two sophisticated businesses is tantamount to an agency relationship," such that Subway could be held vicariously liable for text messages sent by T-Mobile. *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020). The Seventh Circuit rejected this argument and affirmed dismissal of plaintiff's TCPA claim, reasoning that, "[w]hile an agency relationship can be created by contract, not all contractual relationships form an agency." *Id*. Holding otherwise would turn longstanding principles of agency on their head. The existence of a contract between Dimension and AAP is insufficient as a matter of law to create a special agency relationship.

Second, Plaintiff alleges that "Dimension maintained interim control over AAP's actions." (FAC ¶ 53, PageID#105.) However, the Court cannot rely on such a threadbare legal conclusion that simply parrots the applicable legal standard. *Masaebi v. Arby's Corp*., Case No. 2:19-cv-5271, 2020 U.S. Dist. LEXIS 46228, at *6 (S.D. Ohio Mar. 17, 2020) ("the tenet that court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.") (quoting *Iqbal*, 556 U.S. at 662).

Third, the FAC alleges that "AAP only called telephone numbers in approved geographic regions." (FAC ¶ 54, Page ID#105.) As an initial matter, this allegation lacks a factual basis to allow the court to plausibly infer the existence of agency. For instance, an allegation that a purported principal "restricted the geography within which [the alleged agent] could promote [the alleged principal]" (along with additional allegations regarding that the principal provided instruction regarding the volume of calling and exercised day-to-day control — "without any facts showing how [the alleged principal] did those things or how it knew those things, or what facts the

allegations are based on — are not facts that allow the court to draw the reasonable inference that [the alleged principal] is vicariously liable for [the alleged agent's] alleged misconduct." *Naiman v. TranzVia LLC*, Case No. 17-cv-4813, 2017 U.S. Dist. LEXIS 199131, at *31-32 (N.D. Cal. Dec. 4, 2017).

Even if the Court were to accept the factual adequacy of the allegation, simply alleging that AAP chose to only call numbers in "approved geographic regions" is insufficient to establish the degree of control over the manner and means of AAP's calling campaigns necessary to find vicarious liability. *See Jones v. Royal Admin. Servs.*, 887 F.3d 443, 451 (9th Cir. 2018) (finding no vicarious liability even though "we acknowledge that [the alleged principal] exercised some amount of control over [the alleged agent]," including recordkeeping requirements, collecting payments, providing approval for sales literature, and requiring the use of supplied scripts.).

Furthermore, the operative Producer Agreement specifically disclaims the existence of an agency relationship: "[AAP] is an independent contractor, and no relationship of principal and agent … shall be created between [Dimension] and [AAP]." (Producer Agreement, § 4.1.)  The Sixth Circuit has recognized that a contractual provision establishing an independent contractor relationship "flies directly in the face of the classic definition of common-law agency." *Keating*, 615 F. App'x at 372 (6th Cir. 2015) ("Because [the alleged agent] was never authorized to act on [the alleged principal's] behalf, but rather only pursuant to contractual obligations, no principal-agent relationship was established.").  In addition, the Producer Agreement requires AAP to "comply with all laws," including specifically requiring compliance with the National Do Not Call Registry and the TCPA.  (Producer Agreement §§ 4.12, 4.12(b).)  Provisions that require a business conducting outbound calls to "comply with all applicable laws" has been specifically found to foreclose a finding that the alleged principal "had given [] authority to make calls to Plaintiffs in

8

violation of the TCPA." *Kern v. VIP Travel Servs.*, Case No. 1:16-CV-8, 2017 U.S. Dist. LEXIS 71139, at *19 (W.D. Mich. May 10, 2017).

Based on the foregoing, Plaintiff failed to plead facts necessary to allow the Court to plausibly infer the existence of a formal agency relationship between Dimension and AAP. Because the Producer Agreement precludes a finding of agency, any amendment would be futile, and Dimension respectfully requests that dismissal be with prejudice. *See Canterbury v. Columbia Gas of Ohio*, Case No. C2-99-1212, 2001 U.S. Dist. LEXIS 26286, *32 (S.D. Ohio Sep. 29, 2001).

**2. The FAC fails to plead facts to allow the Court to plausibly infer agency through apparent authority.**

"[U]nder the theory of apparent authority, a principal will incur liability for the acts of an 'agent' if the principal held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority." *Keating*, 615 F. App'x at 373-74 (6th Cir. 2015) (internal quotations omitted). Thus, "the apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent." *Id.* "Apparent authority exists only as to those to whom the principal has manifested that an agent is authorized." *Canary v. Youngevity Int'l., Inc.*, Case No. 5:18-cv-03261-EJD, 2019 U.S. Dist. LEXIS 46429, at *22 (N.D. Cal. Mar. 20, 2019) (dismissing complaint where plaintiff failed to allege "he reasonably relied upon something said or done by" the alleged principal to his detriment).

Here, the FAC contains no allegation that Plaintiff relied on any affirmative statement or act *by Dimension* that would lead him to reasonably believe that AAP was acting as Dimension's authorized agent. This omission defeats any theory of apparent authority. Plaintiff has not alleged any act or statement from Dimension *to Plaintiff* suggesting that it conferred authority on AAP to call him in violation of the TCPA – and Plaintiff has not plausibly alleged any such circumstances

here.

> ### 3.    The FAC fails to plead facts to allow the Court to plausibly infer that Dimension ratified AAP's violations of the TCPA.

"[R]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016) (quoting Restatement (Third) of Agency, § 4.01(1) (2006)). Paragraphs 55-61 of the FAC allege that Dimension was aware that AAP engaged in outbound pre-recorded calling prior to the time that Plaintiff received the alleged phone calls subject to this action, and kept working with AAP, causing the telephone calls to Plaintiff.

As discussed below, the FAC fails to adequately plead ratification because (i) ratification cannot occur absent a principal-agent relationship, and (ii) the allegations of the FAC do not demonstrate that Dimension knowingly ratified conduct that would give rise to Plaintiff's TCPA claim.

> ### a.    *Liability under a ratification theory fails because Plaintiff cannot establish an agency relationship between AAP and Dimension.*

Plaintiff's argument that Dimension ratified the conduct of AAP is misplaced for the simple reason that Plaintiff has not properly alleged the existence of an agency relationship between Dimension and AAP, as set forth above.  As explained by Judge Marbley, extending vicarious liability under a ratification theory is subject to a critical limitation: "a person may ratify an act only if the actor acted or purported to act as an agent on the person's behalf."  *Johansen*, 218 F. Supp. 3d at 586 (internal quotations omitted).  Based on the foregoing, "several courts have explained, although a principal is liable when it ratifies an originally unauthorized tort, such as a TCPA violation, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Id.*; *Murray*, 2015 U.S. Dist. LEXIS 89913 at *17 (granting motion to dismiss because "Plaintiff has not plausibly pled an agency relationship between Choice Energy and

Premiere, which is another necessary element for ratification.").

In other words, "ratification is unavailable where neither actual nor apparent authority exist." *Warciak v. Subway Rests., Inc.*, No. 1:16-cv-08694, 2019 U.S. Dist. LEXIS 32357, at *7 (N.D. Ill. Feb. 28, 2019), *aff'd* 949 F.3d 354. As described above, Plaintiff has pled no facts that would permit the Court to plausibly infer the existence of an agency relationship between AAP and Dimension through actual or apparent authority. As such, as a matter of law, Dimension cannot be vicariously liable for AAP's actions under a theory of ratification. *Johansen*, 218 F. Supp. 3d at 587 ("Without this 'prerequisite' principal-agent relationship, a defendant cannot 'ratify' the actions of third parties.").

   b. <u>Ratification fails for the additional reason that Dimension did not ratify conduct that would constitute a TCPA violation.</u>

With respect to the Count II, the FAC wholly fails to set forth any basis for finding that Dimension was on notice that AAP was placing outbound calls in violation of the TCPA's National Do-Not-Call Registry provisions. Notably, the FAC is the first instance in this action alleging that AAP's conduct violated do-not-call provisions, and there is no basis to find ratification with respect to the DNC Class. Therefore, Dimension respectfully moves that Count II be dismissed against it.

With respect to Count I, the FAC simply bases ratification based on the allegation that Dimension was aware that "AAP was engaging in pre-recorded conduct on their behalf" prior to the filing of the FAC. (*Id*. ¶ 56, PageID#105.) However, outbound calls using s pre-recorded voice is not prohibited under the TCPA, such that assuming Dimension's knowledge of such commonplace conduct does not amount to prior knowledge of AAP's acts <u>*in violation of the TCPA*</u>. *Kristensen v. Credit Payment Servs.*, 879 F.3d 1010, 1015 (9th Cir. 2018) ("The knowledge that an agent is engaged in an otherwise commonplace marketing activity is not the sort of red flag that

would lead a reasonable person to investigate whether the agent was engaging in unlawful activities.").

Since the FAC does not allege that Dimension was on notice of AAP's purported violative conduct, the FAC fails to plead facts that would permit the Court to plausibly infer that Dimension ratified any alleged TCPA violations by AAP.

## IV. MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS

### A. Standard for striking class allegations

Fed. R. Civ. P. 23 governs class certification. Against the framework of Fed. R. Civ. P. 23, courts within the Sixth Circuit and throughout the country hold that where it is obvious from the pleadings that the proceeding cannot move forward on a class-wide basis, district courts properly use their authority under Fed. R. Civ. P. 12(f) to strike the class allegations. Specifically, Fed. R. Civ. P. 23(c)(1)(A) provides that the district court should decide whether to certify a class *at an early practicable time* in the litigation, and nothing in the rules provides that a court must first await a motion by the Plaintiff.

Specifically, the Sixth Circuit holds that where the complaint demonstrates on its face that the requirements for maintaining a class action cannot be met, courts may properly strike or dismiss class-based claims. *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011). Illustrative is the holding in *Rikos v. P&G*, where the court granted a motion to strike class allegations where substantial variations existed in states' express warranty laws on elements such as reliance, privity and notice, giving rise to individualized inquiries. Case No. 11-226, 2012 U.S. Dist. LEXIS 25104, *16-17 (S.D. Ohio Feb. 28, 2012). *See also Schilling v. Kenton Cnty.*, Case No. 10-143-DLB, 2011 U.S. Dist. LEXIS 80 at *31 (E.D. Ky. Jan. 27, 2011) (striking class allegations based on the conclusion

that determining whether each person is a member of the proposed class necessitates "highly individualized inquiries").

**B.    The proposed Classes fail to meet Rule 23(b)(2) requirements.**

Plaintiff's class allegations fail to meet the requirements of Fed. R. Civ. P. 23(b)(2) because the primary relief sought by Plaintiff is money damages, such that a class seeking injunctive relief cannot be certified.  Here, Plaintiff predominantly seeks money damages as its remedy in this case such that Fed. R. Civ. P. 23(b)(2) does not apply.  Specifically, Plaintiff seeks statutory monetary damages at paragraphs 78, 79, 84 and 85 of the FAC. Plaintiff restates his prayer for statutory monetary damages at paragraph B of the Prayer for Relief in the FAC.  Despite his request for statutory monetary damages, which is the primary relief requested, Plaintiff also seeks injunctive relief against Defendants. (FAC ¶¶ 80, 86 and paragraph A of the Prayer for Relief, PageID#108-10.)

The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes* provides persuasive guidance here where it held that claims for injunctive relief may only be certified under Fed. R. Civ. P. 23(b)(2) where the monetary relief is incidental to injunctive or declaratory relief.  131 S. Ct. 2541, 2557 (2011). This means that Fed. R. Civ. P. 23(b)(2) certification is proper only when injunctive or declaratory relief is the predominant remedy requested for the putative class members.

Recently, in *Progressive Health & Rehab Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242, 248 (S.D. Ohio 2017), Judge Marbley struck a plaintiff's claim for injunctive relief and explained that where, as here, a Plaintiff seeks an individualized award of monetary damages under the TCPA, these monetary damages are not incidental to Plaintiff's injunctive claim and not authorized under Fed. R. Civ. P. 23(b)(2).  The same result should occur here and Defendants request that Plaintiff's request for injunctive relief be stricken.

**C.**     **Plaintiff's claims are also not typical of all of the Classes because he extensively engaged the calling representative through the use of a third-party, negating a finding of typicality with putative class members who do *not* want to receive telemarketing calls.**

Plaintiff's claims lack typicality with the defined Classes because Plaintiff engaged the calling representative during the call by feigning interest in the services bring marketed.  Plaintiff's conduct in this regard negates any typicality with putative class members who received *unwanted* calls and suffered an invasion of their privacy.

Illustrative is the recent holding in *Johansen v. Bluegreen Vacations Unlimited*, Case No. 20-81076-CIV-SMITH, 2021 U.S. Dist. LEXIS 207872, at *16 (S.D. Fla. Sep. 30, 2021).  In that case, the court considered facts analogous to those pled in the FAC.  Specifically, the court evaluated TCPA claims involving telemarketing calls in which the named plaintiff, who has an extensive history with filing lawsuits alleging violations of theTCPA, actively engaged with the telemarketing representatives for several minutes, verified his personal information and requested additional information on available products and services.  In determining that the plaintiff lacked typicality with putative class members, the court held that "Plaintiff's claim differs from those of putative class members' claims. The record clearly demonstrates the deceptive and dishonest tactics employed by Plaintiff to establish his claim. Thus, *Plaintiff's claim is inherently different that those of the putative class members who presumably did not use similarly deceitful methods*. Plaintiff's conduct necessitates additional inquiries with respect to both standing, consent, and damages". *Id.* *168 (emphasis added).[2]

Similar to the facts presented in *Johansen*, Plaintiff freely admits that, on the September 3, 2021 call, he spoke with a representative and then handed the telephone to his friend, Mr. Silverman, who also engaged the AAP representative who promoted Dimensions' warranty services.  The FAC freely acknowledges that Plaintiff engaged the calling representative and then handed the telephone to a

---

[2] The court also found that the named plaintiff failed to meet the adequacy requirement of Fed. R. Civ. P. 23 based on this conduct.

14

colleague (Mr. Silverman) to continue to engage the representative. (FAC ¶¶ 41-42, , PageID#103.) Plaintiff goes on to state that Mr. Silverman provided his personal information to the calling representative who ultimately received a policy from Dimension. (*Id*. ¶¶ 43-45.)  Plaintiff's allegations reasonably infer that Mr. Silverman deceptively "played along" and provided enough detail to sign up for Dimension's warranty package.

Inherent within Plaintiff's conduct here, like in the *Johansen* case, is the indication to the representative that Plaintiff wanted to learn about Dimension's warranty services, which was obviously not true. Accordingly, Plaintiff's claims are "inherently different" than those of putative class members "who presumably did not use similarly deceitful methods."  Accordingly, Plaintiff fails to meet the typicality requirement of Fed. R. Civ. P. 23(b)(3).

## V.    CONCLUSION

For the reasons explained herein, Defendant Dimension Service Corporation respectfully moves the Court to dismiss all claims against it with prejudice on the grounds that Plaintiff has not, and cannot, plead a basis for finding vicarious liability, or, alternatively, to strike all class claims asserted in Plaintiff's FAC.

Respectfully submitted,

*/s/ Helen Mac Murray*
Helen Mac Murray (0038782), Trial Attorney
Christopher C. Wager (0084324)
Mac Murray & Shuster LLP
6525 West Campus Oval, Suite 210
 New Albany, Ohio 43054
Tel: (614) 939-9955 | Fax: (614) 939-9954
hmacmurray@mslawgroup.com
cwager@mslawgroup.com
*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing has been

furnished electronically on this 15th day of December 2021, with the Clerk of the Court using

CM/ECF.

*/s/ Christopher C. Wager*
