**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| ROYAL SPURLARK, individually and on behalf of other similarly situated. | Case No.: 2:21-cv-3803 |
| Plaintiff, | Judge Edmund A. Sargus |
| v. | Magistrate Judge Chelsey M. Vascura |
| DIMENSION SERVICE CORPORATION, PELICAN INVESTMENT HOLDING, LLC d/b/a AAP and GUSTAV RENNY | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DIMENSION**
**SERVICE CORPORATION'S MOTION TO DISMISS AND/OR STRIKE**

**INTRODUCTION**

Dimension Service Corporation spends most of its energy refuting legal theories not even advanced in the First Amended Complaint.  It is most telling to consider what Dimension Service Corporation makes no attempt to refute.  Dimension Service Corporation does not argue that it has not previously received complaints that its call center Pelican Investment Holding, LLC d/b/a AAP (and its owner Mr. Renny) engaged in the sending of pre-recorded calls in alleged violation of the TCPA. Indeed, this lawsuit was originally filed by another plaintiff alleging he received pre-recorded calls from AAP for Dimension and then Mr. Spurlark *received another such call during the pendency of this lawsuit*. Remarkably, *the conduct continues today* as Mr. Spurlark is submitting the affidavit of two other consumers, Robert W. Clough, II and Anthony Baccari, who have received pre-recorded calls from AAP for Dimension, as recently as earlier this month. As the pre-recorded calling conduct between AAP and Dimension continues to this day, striking the Plaintiff's Fed. R. Civ. P. 23(b)(2) class is premature.

Dimension's argument that Mr. Spurlark's investigation into the illegal pre-recorded calls makes him atypical and warrants striking his class action claims should also be discarded. Prior to, during and since the commencement of this lawsuit, Dimension has worked with AAP with knowledge that AAP is utilizing pre-recorded calls that do not identify themselves or Dimension in the pre-recorded message. The fact that Mr. Spurlark performed an investigation into that conduct, including the failure to identify oneself on a telemarketing call, itself a violation of federal telemarketing law, does not make him an inadequate class representative, it makes him precisely the individual that has demonstrated a willingness to invest him time to be a fiduciary for the class.

Accordingly, Dimension Service Corporation's Motion to Dismiss should be denied.

## FACTS RELEVANT TO THE MOTION

Mr. Spurlark brings this action under the TCPA, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012). § 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The National Do Not Call Registry allows for the registration of telephone numbers to indicate a desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator."  *Id.*  The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA also regulates the use of pre-recorded messages. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

Dimension sells vehicle service warranty contracts. *See* ECF No. 17 at ¶ 30. To sell these services, Dimension relies on pre-recorded telemarketing conducted by third parties, including AAP. *Id.* at ¶ 31-32. Mr. Spurlark's telephone number, (301) 452-XXXX, is registered to a cellular telephone service and was on the National Do Not Call Registry, and had been for more than 30 days, when it received the calls at issue. *Id.* at ¶¶ 35-36. Mr. Spurlark received multiple pre-recorded calls from AAP for Dimension, including in August of 2021. *Id.* at ¶ 38. Mr. Spurlark ignored a series of incoming calls which resulted in listening to generic pre-recorded messages regarding warranties where the company was not identified in the message. *Id.* at ¶ 39-40.

Finally, to identify the calling party, Mr. Spurlark engaged the telemarketer on September 3, 2021. *Id.* at ¶ 41. Following the conversation, Mr. Spurlark's colleague that was with him who answered the questions of the telemarketer and had prior experience with telemarketers, Mr. Silverman, received an e-mail from AAP confirming the call, including AAP's logo and trademark. *Id.* at ¶ 42-44.

As automated telemarketing is done *en masse*, Mr. Spurlark is pursuing this action on behalf of the following putative classes:

> Robocall Class: All persons within the United States: (1) to whose cellular telephone number (2) AAP or Dimension (or an agent acting on behalf of AAP or Dimension) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff.

> AAP or Dimension National Do Not Call Registry Class: All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of AAP or Dimension (3) within a 12-month period, (4) from four years prior to the filing of the Complaint.

*Id.* at ¶ 63.

## LAW AND ARGUMENT

**I.     Mr. Spurlark has Adequately Pled that Dimension is Vicariously Liable for the Telemarketing Conduct of AAP**

On a motion to dismiss under Rule 12(b)(6), a court determines whether a plaintiff is entitled to offer evidence in support of his claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (citation omitted). To survive such a motion, a plaintiff must merely plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A motion to dismiss must be denied unless there is no "reasonable expectation that discovery will reveal evidence" that would enable the trier of fact to decide in favor of the plaintiff. *Matrix Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Ever since the TCPA was enacted, the FCC has repeatedly warned that the TCPA's broad restrictions on various forms of "telephone solicitations" cannot be evaded simply by utilizing third parties to physically transmit illegal calls. *See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, ¶ 13 (1995).

In 2013, the FCC ruled that sellers could be vicariously liable for the unlawful calls of third-party telemarketers based on "federal common law principles of agency," including theories of formal agency, apparent authority, and ratification. *See In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6582-84 (2013) ("2013 FCC Order"). "The FCC has interpretive authority over the [TCPA]." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 466-467 (6th Cir. 2010). *See also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371-372 (6th Cir. 2015) (adopting 2013 FCC Order). In its 2013 Order, the FCC explained that vicarious liability was critical to realizing the TCPA's consumer protection goals:

> [A]s the telemarketing industry acknowledges – the seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. … [C]onsistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules.

2013 FCC Order, 28 FCC Rcd. at 6588. And, as described above, the FCC envisioned the scenario here where a defendant takes a strained reading of the plaintiff's complaint and asserts that the matter should be dismissed because the inner workings of the relationship between the defendant and the third party it used to physically place the calls has not been pled. As this Court has previously recognized:

> The FCC has recognized that it is the defendant, not the plaintiff, who can reasonably be expected to know who placed the call, the relationship between the defendant and any third party, and any other related facts. *See In the Matter of Dish Network*, 28 FCC Rcd. 6574, 6592-93 (2013) (explaining that consumers may acquire evidence of relationship between telemarketer and seller through discovery if they are not independently privy to such information and that a consumer is not required to provide proof at the time it files its complaint that the seller should be held vicariously liable for the offending call).

*Charvat v. LE Energy, LLC*, No. 2:19-cv-1325, 2019 U.S. Dist. LEXIS 139601, at *7-8 (S.D. Ohio Aug. 19, 2019) (Morrison, J.). *See also Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150-1151

(N.D. Ill. 2014) ("Defendants insist, however, that plaintiff has not pled any basis from which to infer vicarious liability because he 'does not identify the third-party telemarketer or lead generator' who initiated the call, nor does he allege 'what arrangement, if any, that third party had with either defendant.' These objections are meritless because it is defendants, not plaintiff, who can reasonably be expected to know these facts, and plaintiff's allegations, taken together, suffice to entitle him to discovery on the issue of vicarious liability.") (citing 2013 FCC Order).

While only adequately pleading one of them is necessary to allow this case to proceed to discovery, Mr. Spurlark has adequately alleged that Dimension is vicariously liable under a theory of (a) classical agency or (b) ratification.

### _Classical Agency_

"In TCPA cases, the Sixth Circuit looks to the Restatement of Agency to determine whether vicarious liability should be imposed." _Johansen v. HomeAdvisor, Inc._, 218 F. Supp. 3d at 586. According to the Restatement, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act." Restatement (Third) of Agency § 1.01. The essential element of an agency relationship is the principal's "right to control" the actor. _Id._ at § 1.01 cmt. f. A person may be an agent "although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment." _Id._ at § 1.01 cmt. c. "A principal's failure to exercise the right to control does not eliminate it, nor is it eliminated by physical distance between the agent and the principal." _Id._

A recent Seventh Circuit Court of Appeals TCPA case, _Bilek v. Fed. Ins. Co._, 8 F.4th 581 (7th Cir. 2021), is illustrative when considering the requirements of a plaintiff at the pleading stage

in a TCPA vicarious liability case.[1] In *Bilek*, the plaintiff alleged TCPA violations against a health insurance company and its sales agent on a vicarious liability theory that the sales agent contracted with lead generators, which in turn placed illegal telemarketing on defendants' behalf. *Bilek*, 8 F.4th 581. Defendants moved to dismiss the claims arguing plaintiff failed to sufficiently allege facts showing an agency relationship between the defendants on the one hand, and the lead generators on the other. *Id.* The district court granted the motion to dismiss, but the Seventh Circuit reversed. *Id.* The Seventh Circuit expressly *rejected* the argument that to survive a motion to dismiss on a theory of vicarious liability a plaintiff must plead facts that the defendant "controlled the timing, quantity and geographic location of a lead generators' telemarketing." *Id.* at 584. The court stated that whether an agency relationship exists is a question of fact that is not required to be proven at the pleading state. *Id.* The court reiterated that a claim is plausible where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 583 *quoting Ashcroft*, 556 U.S. at 678. The court made clear that "plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The Seventh Circuit ruled that a defendant in a TCPA case may be vicariously liable for its "lead generator's unauthorized robocalling under actual authority, apparent authority, and ratification principles of agency liability." *Bilek* at 587. Each of these three theories offers "an independent basis" for vicarious liability. *Id.*

"Control is a concept that embraces a wide spectrum of meanings, but within any relationship of agency the principal initially states what the agent shall and shall not do, in

---

[1] Both the Sixth and Seventh Circuit Courts of Appeals follow the federal common law of agency with respect to TCPA vicarious liability. *See Bilek* and *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371-372 (6th Cir. 2015) (adopting 2013 FCC Order).

specific or general terms. Additionally, a principal has the right to give interim instructions or directions to the agent once their relationship is established." *Restatement 3d of Agency*, § 1.01 (Comment f(1)). Mr. Spurlark alleges that Dimension had extensive control over the actions of AAP:

- AAP was contractually required to promote Dimension services on their telemarketing calls in order to make sales, and did so, as they did with the Plaintiff.
- Moreover, Dimension maintained interim control over AAP's actions.
- AAP only called telephone numbers in approved geographic regions.[2]

*See* ECF No. 17 at ¶¶ 52-54. Such allegations are sufficient at this stage. *See Rogers v. Interstate Nat'l Dealer Servs.,* No. 1:20 CV 00554, 2020 U.S. Dist. LEXIS 142766, at *13 (N.D. Ohio Aug. 10, 2020) (Denying motion to dismiss in TCPA case, holding "plaintiff specifically alleges that Dealer Services hired John Doe to solicit customers on its behalf. Plaintiff further alleges that Dealer Services had some degree of control and oversight over the John Doe telemarketer that made the call. While plaintiff does not provide the exact details of the relationship between Dealer Services and John Doe in the Complaint, at this stage of the proceedings, he is not required to do so.") Indeed, unlike *Bilek*, which involved allegations that calls were made by a third-party telemarketer hired by the agent of the defendant, Mr. Spurlark has alleged that AAP, the agent of the defendant, made the calls at issue. This goes far beyond the pleading standard required in *Bilek*, which expressly *rejected* the argument that to survive a motion to dismiss on a

---

[2] As Dimension is likely aware of the fact that this allegation is fatal to its pleading, it points to the fact that its contract does not strictly make such a statement. However, as discussed below, the contract does not prevent Dimension from making subsequent instructions to AAP and even repeatedly envisions it. Discovery is needed on this issue and it is undisputed that the auto warranty contracts sent to consumers in response to the calls have "state specific" instructions and disclosures.

theory of vicarious liability, a plaintiff must plead facts that the defendant "controlled the timing, quantity and geographic location of a lead generators' telemarketing." 8 F.4th 585.

Dimension also tries to rely on *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443 (9th Cir. 2018), however that case is inapposite. In *Jones*, the contract expressly prohibited robo-calling. *Id.* at 446-47.  Furthermore, there was no "record evidence contradicting this limitation on [the agent's] authority," whereas in this case Dimension has previously received notice that AAP was engaged in making pre-recorded calls on its behalf. *Id.* at 489.  Moreover, Jones primarily relies on a theory of express actual authority based on a decision that the Ninth Circuit clarified is limited "to actual authority and vicarious liability under an employer-employee theory," which has no relevance here. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 n.3 (9th Cir. 2018).

Dimension then attached its contract with AAP and claims that it forecloses the potential of vicarious liability for two reasons. First, Dimension argues that its classification of an independent contractor relationship is dispositive. However, "an independent contractor can be an agent. An agent need not be an employee." *1-800 Contacts, Inc., v. Lens.Com, Inc.*, 722 F.3d 1229, 1251 (10th Cir. 2013); *see also Hargett v. Corr Med. Servs.*, 2014 U.S. Dist. LEXIS 75747, *51-52 (S.D. Ind. June 3, 2014). Moreover, Dimension asserts that its contractual requirement that AAP comply with the TCPA is dispositive. However, the mere existence of a "TCPA compliant calls only" clause in a telemarketing contract is not a talisman against liability and such an argument has been rejected by a court when rejecting a summary judgment motion, never mind the motion to dismiss attempted here. *See Bakov v. Consol. World Travel, Inc.*, 2019 U.S. Dist. LEXIS 211399, *14-22 (N.D. Ill. December 9, 2019) ("Defendant cannot shirk liability by arguing that [the caller] was contractually obligated to comply with the TCPA."). Moreover, discovery is

appropriate to understand the extent of the knowledge of Dimension regarding the prior complaints, including the one that preceded Mr. Spurlark's claim, as discussed below.

However, the contract does further reveal the extent of the right to control that Dimension had over AAP, including:

- Requiring AAP to continue to service contracts it sold for Dimension, even after Dimension terminates them. ECF No. 25-1 at ¶ 2.3
- AAP must specifically comply with the "underwriting, claims, guidelines and other procedures issued by the Company." *Id.* at ¶ 4.2
- AAP must use materials in its marketing that Dimension requires. *Id.*
- AAP must only sell the contracts "that qualify per [Dimension's] guidelines". *Id.* at ¶ 4.4
- AAP is restricted to use "telemarketing or direct marketing scripts approved by [Dimension]". *Id.*
- AAP allows Dimension to audit its business practices with any reasonable notice, including up to 1 year after termination of this agreement. *Id.* at ¶ 4.6

Many such contractual terms have each served as an independent basis for potential vicarious liability for a TCPA defendant. It is more than plausible that the plaintiff may have a claim, and multiple courts have denied summary judgment for a defendant under such circumstances. *See Hossfeld v. Lifewatch, Inc.*, 2021 U.S. Dist. LEXIS 25650, *14-20 (N.D. Ill. Feb. 5, 2021); *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp.3d 817, 829-33 (N.D. Ill. 2016); *Williams v. Pillpack LLC*, 2021 U.S. Dist. LEXIS 4052, *3 (W.D. Wash. Jan. 7, 2021). Similar facts have also resulted in trial verdicts for the Plaintiff. *See Krakauer v. Dish Network L.L.C.*, 2017 U.S. Dist. LEXIS 86448, *5 (M.D. N.C. 2017) (upholding jury's verdict where defendant "periodically imposed requirements" on the telemarketing); *United States v. Dish Network LLC*, 256 F.Supp.3d 810, 922 (C.D. Ill. 2017) (agency established were DISH authorized third party to telemarket its services and "revised scripts"). More fundamentally, discovery is simply required to understand the full extent of the relationship between the defendants. As such, the Court can

reasonably infer from the First Amended Complaint that AAP is the agent of Dimension when it engaged in pre-recorded telemarketing conduct promoting its goods and services.

**_Ratification_**

"A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Restatement (Third) of Agency* § 4.01. Thus, "[a] principal can ratify his agent's actions *either* by not repudiating them *or* by accepting their benefit." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 677 (7th Cir. 2004) (emphasis added).

As an initial matter, Dimension claims that there is no availability of ratification because Mr. Spurlark has not pled an agency relationship. However, as explained above, he has pled such a relationship.

Next, Dimension concedes, as it must, that it was aware that AAP made pre-recorded marketing calls. However, it claims that since pre-recorded calls are not *per se* illegal, then it should not be held liable if it could escape knowledge that the calls were not made with consent. However, the existence of prior express consent is an affirmative defense to a TCPA claim. *See Cataldi v. Ocwen Loan Servicing, LLC*, No. 17-11487, 2017 U.S. Dist. LEXIS 196722, at *3 (E.D. Mich. Nov. 30, 2017) ("Plaintiff correctly argues that prior express consent is an affirmative defense, and Defendant has the burden of proof of establishing the consent."). As such, the Plaintiff pleading that Dimension was aware of AAP's pre-recorded calling conduct does create a plausible inference that AAP is engaged in illegal conduct, it can just be something that is overcome if AAP can carry their burden with an affirmative defense.

Ratification requires either "knowledge of material facts" or "willful ignorance," i.e, where the principal is "aware that it does not know the material facts and ratif[ies] anyway."

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. March 22, 2019) (reversing summary judgment for defendant on ratification in a TCPA case). Ratification through willful ignorance occurs "when the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation." *Id.* at 1075, citing Restatement (third) of Agency § 4.06 cmt. d.

Multiple courts have held that after receiving allegations of violations of TCPA, a reasonable inference can be raised that a defendant such as Dimension ratified the conduct. *See Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp. 3d 817, 829-33 (N.D. Ill. 2016) (sellers ratified telemarketers conduct by accepting the benefits of the unlawful calls even after being put on notice that the calling campaign may violate the TCPA); *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078, *13-14 (N.D. Cal. 2018) (a reasonable jury could find defendant liable on ratification theory where "Alarm.com knew of Alliance's allegedly illegal telemarketing conduct and accepted the benefits therefrom"); *Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593, at 8 (S.D. Fl. 2015), (allegations sufficient to state a claim where seller accepted the benefits of the conduct by having text messages sent on its behalf to phone numbers obtained on its behalf); *Klein v. Commerce Energy, Inc.,* 2017 WL 2672290, at *14 (W. D. Pa., 2017) (creditor ratified its debt collectors calls because it is presumed it would receive the benefit of any money collected and it knew that its collector was calling the wrong party). Indeed, as Judge Gaughan recently held while denying a similar motion to dismiss regarding the calling of a John Doe for a defendant in a TCPA case:

> Plaintiff further alleges that despite receiving widespread complaints about these TCPA violations, Dealer Services "continued to fail to monitor the third parties operating on its behalf" and "knowingly and actively accepted business that originated through the illegal telemarketing calls." Accepting these factual allegations as true, plaintiff has plead sufficient facts to raise a reasonable inference that Dealer Services ratified the conduct of the John Doe.

*Rogers v. Interstate Nat'l Dealer Servs.,* No. 1:20 CV 00554, 2020 U.S. Dist. LEXIS 142766, at *12 (N.D. Ohio Aug. 10, 2020).

Finally, this "reasonable person" standard is not something that is appropriately suitable to be resolved at the motion to dismiss stage in the defendant's favor without discovery into the reaction of Dimension with respect to the prior complaints received. Did Dimension ask AAP for sufficient information that the calls were made legally? Did it ask for any information? Or, did it instead do nothing other than try to benefit from AAP's settlement with the prior consumer ironically claiming that AAP was its agent or that it is an intended beneficiary under the agreement[3], but allowed AAP's unlawful telemarketing to continue unchecked? It's unknown at this point, but discovery will reveal the answers to those questions. Indeed, the single case cited by Dimension, *Kristensen v. Credit Payment Servs.,* 879 F.3d 1010 (9th Cir. 2018), was decided on summary judgment. Moreover, this case is clearly unlike *Kristensen*, where the Court held, "[n]or is there any basis to infer that Click Media assumed the risk of lack of knowledge, because Kristensen did not present evidence that Click Media had knowledge of facts that would have led a reasonable person to investigate further but ratified AC Referral's acts anyway without investigation.". *Id.* at 1015. Here, the original plaintiff *filed this lawsuit*, there is no greater action that could have been taken to prompt a reasonable person to investigate the conduct of their co-defendant than being named in a lawsuit. What Dimension did as a result is the appropriate subject of discovery.

---

[3] *See* ECF No. 10.

**II.      It is Premature to Determine if Mr. Spurlark's 23(b)(2) Injunctive Relief is Incidental to Monetary Relief, Especially in Light of the Ongoing Conduct.**

Rule 23(b)(2) provides for class certification when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Fed. R. Civ. P. 23(b)(2). Dimension argues that certification under Rule 23(b)(2) would be inappropriate because the proposed class is primarily interested in recovering monetary damages and the class lacks the cohesiveness necessary for certification under Rule 23(b)(2). However, such a finding is premature.

First, at this initial state prior to the commencement of any discovery, the scope of the calling conduct is unknown. And while it may be that the conduct is voluminous, the calling records that can be recovered that show the amount of calls made is still to be determined.  It is simply unknown what discovery will bring and how that will impact the viability and scope of s 23(b)(2) class in comparison to a 23(b)(3) class. *See e.g. Mauer v. Am. Intercontinental Univ., Inc.,* No. 16 C 1473, 2016 U.S. Dist. LEXIS 121061, at *16-17 (N.D. Ill. Sep. 8, 2016) (denying similar motion holding, "the Court will not close off this option or determine whether the injunctive relief Mauer seeks is merely a stepping stone to a damages request at this stage of the proceedings."); *See also Fitzhenry v. Career Educ. Corp.*, No. 14-CV-10172, 2016 U.S. Dist. LEXIS 26244, 2016 WL 792312, at *5 (N.D. Ill. Mar. 1, 2016) (refusing to determine at pleading stage whether damages were incidental to requested injunctive relief without the benefit of discovery or further litigation in TCPA case).

Second, as described in greater detail below, Dimension's relationship with AAP continues, including its pre-recorded calling conduct. As such, a 23(b)(2) class is essential in curbing that conduct, an issue not present in *Progressive Health & Rehab Corp. v. Quinn Med.,*

*Inc.,* 323 F.R.D. 242, 248 (S.D. Ohio 2017) cited by Dimension. Indeed, such a continuing relationship and the possibility of further violations has a material impact on a Court's analysis in a TCPA case when deciding to certify or strike a 23(b)(2) class. *See e.g. Fisher v. MJ Christensen Jewelers, LLC,* No. 2:15-cv-00358-RFB-NJK, 2018 U.S. Dist. LEXIS 36048, at *20-21 (D. Nev. Mar. 6, 2018) ("the Court does not find that there is a likelihood that the alleged violations in this case would continue in the future. The Court agrees with Le Vian that Plaintiff has not shown a need for injunctive relief, and that the monetary relief requested is more than incidental.")

### III.    Mr. Spurlark's Investigation into the Illegal Calls at Issue Makes Him an Ideal Class Representative, Not an Atypical One.

A defendant is permitted to file motion to strike before the plaintiffs have the opportunity to file a motion to certify the class. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (explaining that Fed. R. Civ. 23(c)(1)(A) states that the district court should decide whether to certify a class "[a]t an early practicable time"). However, this Court has previously acknowledged that courts should exercise caution when striking class action allegations based solely on the pleadings. *See Geary v. Green Tree Servicing, LLC*, No. 2:14-cv-00522, 2015 U.S. Dist. LEXIS 35059, 2015 WL 1286347, at *17 (S.D. Ohio Mar. 20, 2015) ("The Court deems it prudent to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage."). "The moving party has the burden of demonstrating from the face of the ... complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove." *Finesse Express, LLC v. Total Quality Logistics, LLC*, No. 1:20cv235, 2021 U.S. Dist. LEXIS 60648, at *24 (S.D. Ohio Mar. 30, 2021).

Here, citing a single out of circuit case, *Johansen v. Bluegreen Vacations Unlimited*, Case No. 20-cv-81076 (S.D. Fla., Sept. 30, 2021)[4], itself decided at the motion for class certification stage, Dimension offers that it will be *impossible* for this Court to certify a claim because Mr. Spurlark must have wanted the unsolicited telemarketing calls because he investigated the final one he received. As a factual matter, Mr. Spurlark alleges that he ignored multiple calls from AAP and Dimension prior to engaging the telemarketer on the final one. *See* ECF No. 17 at ¶¶ 38-41. No such fact exists in *Johansen*, where the caller was identified at the beginning of the call and the initial calls were answered.

Moreover, conducting an investigation into who illegally called you, especially when the caller has not identified themselves, has been applauded by courts around the country, as opposed to the basis to find that it is impossible to certify a class with that individual. Indeed, the Federal Trade Commission, which is charged with enforcement of federal telemarketing laws, regularly has investigators pose as potential customers, and this Court has endorsed that approach. *See e.g.* Consent Decree, *United States v. Credit Bureau Collection Services*, No. 2:10-cv-169, Doc. No. 3, § X (S.D. Oh. Feb. 24, 2010) (authorizing FTC to use "lawful means," including "posing as consumers and suppliers" in order to monitor and investigate compliance with federal law).  TCPA plaintiffs are permitted to engage in the same conduct:

> Cognizant of how damaging Mey's evidence is, Defendants disparage her as a "professional litigant" who "earns her living by selling things on eBay and by being a plaintiff in class action TCPA lawsuits." 12/14/15 Tr. at 41. (They neglect to mention that she is also supported by her spouse. Doc. 100-3 at 5-6.) According to Defendants, Mey's statements should be ignored because she often misrepresented to telemarketers that the name "Lifewatch" appeared on her caller identification in order to elicit their connection to Lifewatch. Doc. 100 at 16. But the telemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch.

---

[4] This case is currently on appeal.

*FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016). Private TCPA lawsuits are not

treated any differently – posing as an interested consumer is an approach endorsed by Courts in

order to ascertain the identity of the calling party and hold them responsible. The Middle District

of Tennessee, for example, has explained:

> The calls show that Cunningham appears to have been very good at eliciting
> information from the callers that he could later use in this lawsuit, which the RRMS
> Defendants suggest demonstrates that he was cultivating a TCPA claim.
> Cunningham's Second Amended Complaint, though, **openly admits that the**
> **reason he eventually accepted one of the calls was 'to ascertain the identity of**
> **the party placing' them, and Cunningham has explained his sleuthing in**
> **significant detail himself. (Doc. No. 57 at ¶ 13.) His later pleadings are entirely**
> **straightforward that he was in fact cultivating a claim. (Doc. No. 85 at 10 ('The**
> **only reason why the Plaintiff faked interest in the calls was to identify the seller**
> **of goods/services that was behind the calls.'))… [i]t is safe to say that, when**
> **the telemarketers in this case called a phone belonging to Cunningham, they—**
> **presumably unwittingly—found themselves in the sights not of an ordinary**
> **hapless consumer, but a seasoned plaintiff, likely primed and ready to take**
> **them to court if their actions violated the TCPA. Nothing in the Constitution,**
> **though, requires a plaintiff to be a naïf.**

*Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1194-95 (M.D. Tenn.

2017) (emphasis added).

The TCPA and the statutory damages it offers plaintiffs are "specifically designed to

appeal to plaintiff's self-interest and to direct that self-interest toward the public good" with

statutory damages operating as rewards, or "bounties," for catching telemarketers engaged in

illegal practices to them. *Cunningham*, 251 F. Supp. 3d at 1195. *See also Charvat v. Echostar*

*Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) ("Phillip Charvat has not been shy in taking on

the role of a private attorney general under the [TCPA]."); *Universal Underwriters Ins. Co. v.*

*Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (private right of action

under TCPA demonstrates Congressional intent to incentivize aggrieved parties to act as "private

attorneys general"); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va.

2017) (denying a motion for summary judgment in a TCPA case holding, "It is true that the plaintiff has brought a number of TCPA cases. It is further true that she has telephone answering and recording equipment[, but] [t]his does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into.…While [defendant] is understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended—enforcing the law.")

Mr. Spurlark's efficacy, just as in *Mey*, was also caused by the Defendants failure to comply with federal telemarketing law, and not just the fact that robocalls were sent to him without permission, but also their failure to identify themselves. FCC regulations provide that:

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. §§ 64.1200(d)(4).

If Dimension's argument were to prevail, then it would have discovered a way to avoid any meaningful TCPA liability: utilize a robocaller that doesn't identify itself until the consumer substantially engages with it. Then, if a consumer engages with the robocaller to identify who is calling, claim that they are atypical to be a class representative because they must have wanted the calls. Luckily for consumers, as recognized by the FTC and this Court, such a scheme will not work in the robocalling context.

**IV.** **Dimension and AAP are Continuing their Pre-Recorded Calling Conduct. As such, to the Extent that the Plaintiff has Not Stated a Claim or the Court is Inclined to Strike any Allegations, the Plaintiff should be permitted to Amend.**

For months, the various plaintiffs in this lawsuit have alleged that Dimension has not taken action in response to its knowledge that AAP has been engaged in sending illegal pre-recorded telemarketing calls on its behalf. That conduct continues, as recently as this month. Robert W. Clough, II, has submitted an affidavit attached as Exhibit 1 that explains:

- I have been retained by counsel that represent Mr. Spurlark related to claims I have against the defendants. I have personal knowledge of the following facts and, if called upon as a witness, could and would competently testify thereto.
- My residential telephone line has been on the National Do Not Call Registry prior to the call.
- On December 6, 2021, I received a telemarketing call on that number.
- When I answered the call, a pre-recorded message began playing regarding automobile warranties.
- The company that was calling was not identified on the call.
- I engaged the telemarketer to identify what company he was from and what product he was promoting.
- The telemarketer identified that Dimension Service Corporation would be the administrator on the policy that was being issued.
- However, the company that the telemarketer worked for was not revealed until I placed a down payment on an automobile service policy.
- On December 13, 2021 I received a packet regarding the automobile service policy as a result of the December 6, 2021 call.
- The policy states that the "administrator" for the contract is "Dimension Service Corporation, located at 5500 Frantz Road, Suite 120, Dublin, OH 43017."

Mr. Clough is not alone, as Mr. Anthony Baccari had a similar experience with AAP and Dimension and has submitted his Declaration as Exhibit 2. To the extent this Court believes that Mr. Spurlark has not stated a claim, or is somehow an atypical class representative, an amended complaint should be permitted for either of these individuals to state their claim.

## CONCLUSION

For the foregoing reasons, Dimension Service Corporation's Motion to Dismiss should be DENIED.

Dated: December 30, 2021

Respectfully submitted,

**/s/ Anthony I. Paronich**
Anthony I. Paronich (admitted *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Brian K. Murphy, Trial Attorney (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2021, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

**/s/ Anthony I. Paronich**
Anthony I. Paronich (admitted *pro hac vice*)