IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROYAL SPURLARK,

        **Plaintiff,**

    v.

DIMENSION SERVICE
CORPORATION, et al.,

        **Defendants.**

Case No. 2:21-cv-3803
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

**OPINION AND ORDER**

This matter is before the Court on four motions to dismiss Plaintiff Royal Spurlark's Amended Complaint (ECF Doc. 17) under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2)—or, alternatively, motions to strike the class claim allegations under Federal Rules of Civil Procedure 12(f) and 23—brought by Defendants Dimension Service Corporation ("Dimension"), Pelican Investment Holding, LLC ("AAP") and Gustav Renny. (ECF Nos. 25, 30–32.) For the reasons set forth below, Defendants' Motions to Dismiss and Motions to Strike are **DENIED.**

**I. BACKGROUND**

On December 1, 2021, Plaintiff filed his First Amended Complaint ("the Complaint") against Defendants alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits unsolicited telemarketing calls made to individuals on the National Do Not Call List or containing pre-recorded messages. (*See generally* Compl., ECF Doc. 17.) Plaintiff alleges two counts under the TCPA that Dimension—by and through its agent AAP— engaged in prohibited conduct when calling his and other person's personal cellphone numbers.

1

(*Id*. ¶¶ 76–86.) First, AAP made telephone calls with pre-recorded voice technology without first obtaining prior express consent by the Plaintiff and other putative class members. (*Id.* ¶ 77.) Second, AAP placed more than one telemarketing call to Plaintiff and other putative class members listed on the National Do-Not-Call Registry. (*Id.* ¶ 82.)

The Court accepts the following allegations as true. Dimension, an Ohio company, sells vehicle service warranty contracts and relies on pre-recorded telemarketing conducted by third parties to sell its services. (*Id.* ¶¶ 30–32.) One of the third parties Dimension hired was AAP, operated by Gustav Renny, the "Managing Member." (*Id.* ¶ 2); (Dimension's Mot. to Dismiss, ECF No. 25-1 at 7). AAP was contractually required to promote Dimension services on the telemarketing calls in order to make sales. (Compl. ¶ 52; ECF No. 25-1.) Dimension maintained interim control over AAP's actions and had knowledge that AAP was engaging in pre-recorded telemarketing, including correspondence and other litigation about similarly violative conduct. (ECF No. 17 ¶¶ 53–58.) Mr. Renny, through his association with AAP, participated in the alleged telemarketing through involvement with the selection of telephone numbers to call, drafting of call scripts, and authorization of pre-recorded messages. (*Id.* ¶ 28.)

Plaintiff's telephone number is registered to a cellular telephone service primarily used for personal purposes. (*Id.* ¶¶ 35–38.) It had been on the National Do-Not-Call Registry for more than 30 days when he received pre-recorded calls from AAP for Dimension. (*Id.*) One of those calls occurred in August 2021. (*Id.* ¶ 38.) Plaintiff ignored multiple incoming calls which resulted in listening to generic pre-recorded messages regarding warranties where the company was not identified in the message. (*Id.* ¶¶ 39–40.) Eventually, Plaintiff engaged a telemarketer on September 3, 2021, in an attempt to identify the calling party. (*Id.* ¶ 41.) After answering the call, Plaintiff handed his phone over to a colleague, who provided his information to the caller and

received an email confirming the call with AAP's logo as well as a policy packet for Dimension. (*Id.* ¶¶ 42–45.) The "seller information" on the packet was AAP and provided AAP's name and address. (*Id.* ¶ 46.)

Since automated telemarketing is done *en masse*, Plaintiff is pursuing this action on behalf of two putative classes:

> <u>Robocall class</u>: All persons within the United States: (1) to whose cellular telephone number (2) AAP or Dimension (or an agent acting on behalf of AAP or Dimension) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff.
>
> <u>AAP or Dimension National Do Not Call Registry Class</u>: All persons in the United States whose, (1) telephone numbers were on the National Do Not Call Registry for at least 30 days, (2) but received more than one telephone solicitation from or on behalf of AAP or Dimension (3) within a 12-month period, (4) from four years prior to the filing of this Complaint.

(*Id.* ¶ 63.)

## II. STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12 allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal under 12(b)(6), the complaint must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the" plaintiff is entitled to the relief requested. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Accepting all the plaintiff's factual allegations as true, the Court construes the complaint in the light most favorable to the non-moving party when considering a Rule 12(b)(6) motion. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

The Court must read Rule 12(b)(6) in conjunction with Federal Rule of Civil Procedure 8(a), requiring a short and plain statement of the claim showing that the plaintiff is entitled to relief. *Ogle v. BAC Home Loans Servicing LP*, 924 F. Supp. 2d 902, 907 (S.D. Ohio 2013). Thus, the pleading's factual allegations, assumed to be true, must do more than create mere speculation or suspicion of a legally cognizable claim; they must show entitlement to relief. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). As part of the 12(b)(6) inquiry, the Court considers the content of the complaint—as well as items appearing in the case record mentioned therein and central to its claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993).

Additionally, Federal Rule of Civil Procedure 12 allows for dismissal of a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a court considers a 12(b)(2) motion prior to discovery and without holding an evidentiary hearing, the plaintiff need only make a "*prima facie* showing that personal jurisdiction exists." *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th Cir. 1989). This solely requires the plaintiff to demonstrate "with reasonable particularity" that the defendant's contacts with the forum state "support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (citation omitted). The district court "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Serras*, 875 F.2d at 1214. The court cannot "weigh the controverting assertions of the party seeking dismissal." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020); *see also Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, No. 2:21-CV-996, 2022 WL 479781, at *3 (S.D. Ohio Feb. 17, 2022).

### B. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "Because striking a portion of a pleading is a drastic remedy, such motions are generally viewed with disfavor and are rarely granted." *AT & T Global Info. Solutions Co. v. Union Tank Car Co.,* No. C2–94–876, 1997 WL 382101, at *1 (S.D. Ohio Mar.31, 1997) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953). The action of striking a pleading should be "resorted to only when required for the purposes of justice" and when "the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp.*, 201 F.2d at 822.

### III.  ANALYSIS

### A. Motions to Dismiss

Congress enacted the TCPA in response to consumer outrage about the proliferation of intrusive, nuisance telemarketing calls. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Section 227 expressly prohibits certain telemarketing practices. *See generally* 47 U.S.C. § 227. Telemarketers violate § 227(b) when they "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or pre-recorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(a). The TCPA provides a private right of action to anyone who receives calls in violation of that provision. 47 U.S.C. § 227(b)(3).

Additionally, § 227(c) of the TCPA requires the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Among these regulations promulgated pursuant § 227(c) is the National Do-Not-Call Registry. *Charvat v. NMP, LLC*, 656 F.3d 440, 443–44 (6th Cir. 2011) (citing 47 C.F.R. § 64.1200(d)). A telemarketer must honor "do not call" requests no later than thirty days after a "residential telephone subscriber" makes such a request. *See* 47 C.F.R. § 64.1200(d)(3). A "residential telephone subscriber" is a "subscriber to a telephone exchange service that is not a business subscriber." 47 C.F.R. § 64.2305(d).

The National Do-Not-Call Registry provides one method of making a "do not call" request, allowing consumers to register their telephone numbers to indicate a desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.* The Sixth Circuit has held that § 227(c) of the TCPA provides a private right of action for violations of do-not-call requests. *Charvat*, 656 F.3d at 444.

Accordingly, a consumer plausibly pleads claims under § 227(b)(1)(a) or § 227(c) of the TCPA by presenting facts that indicate a telemarketer called the consumer's personal telephone number without consent (1) utilizing a pre-recorded message, and/or (2) more than thirty days after the consumer placed their telephone number on the National Do-Not-Call Registry. Plaintiff has done just that. Plaintiff has indicated the timeframe he received calls with pre-recorded messages—which admittedly did not identify the caller—as August 2021. He ignored these calls until September 3, 2021, when he answered one and had a colleague engage with the telemarketer in an ultimately successful bid to identify the caller as AAP selling Dimension's product. (Compl. ¶¶ 41–48.) He also alleged he had been on the National Do-Not-Call Registry for more than 30

days prior to receiving the calls at issue. (*Id.* ¶ 35.) From these facts, the Court reasonably infers Defendants have engaged in conduct that violates the TCPA.

### 1. Defendant's common arguments

Defendants advance several arguments that neither call the plausibility of Plaintiff's Complaint into question nor otherwise render the Complaint so deficient as to warrant dismissal. (*See generally* Motions to Dismiss, ECF Nos. 25, 30–32). First, AAP and Mr. Renny argue that since Plaintiff did not identify the August 2021 callers, there is "zero basis" to hold either party responsible "for unknown calls." (ECF No. 30 at 7; ECF No. 32 at 10.) But Plaintiff has alleged facts indicating that AAP made at least made the September 2021 call utilizing a pre-recorded message, which multiple calls with the same pre-recorded message preceded. (Compl. ¶¶ 35–48.) The content and timing of the September 2021 call allows the court to draw the reasonable inference that AAP made the August 2021 calls to market Dimension's services. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (finding in a TCPA case that the content and timing of several unanswered calls compared to answered calls allows the court to draw the inference that the unanswered calls also came from the defendants).

Specific to Count II, AAP and Mr. Renny take issue with Plaintiff's omission of the exact date he placed his phone number on the National Do-Not-Call Registry. (ECF No. 30 at 5; ECF No. 32 at 9). But the omission of that fact, a readily verifiable piece of information that can be adduced in discovery, is not grounds for dismissal. Plaintiff has alleged the calls took place more than thirty days after he placed his number on the Registry.

Next, AAP and Mr. Renny assert Plaintiff is not a "residential telephone subscriber" because he alleges his cellphone is "primarily" used for personal purposes, indicating that it is also used for another purpose. (ECF No. 30 at 7 ECF No. 32 at 12.) While the National Do-Not-Call

7

Registry provision of the TCPA applies only to "a residential telephone subscriber," the FCC defines the phrase as one who is not a "subscriber to a telephone exchange service for businesses." *See* 47 C.F.R. § 64.2305(b)-(d). Plaintiff's Complaint does not fall outside that definition simply because he alleged to "primarily" use his cellphone for personal purposes, particularly since he also alleged that the number "is not associated with a business." (Compl. ¶ 37.)

### 2. Mr. Renny's arguments against personal jurisdiction and liability

Mr. Renny individually asserts that this Court does not have personal jurisdiction over him and thus he must be dismissed from this lawsuit. (ECF No. 32 at 4). Plaintiff alleges that Mr. Renny is subject to specific personal jurisdiction in connection with this action. (ECF No. 34 at 16). At this stage of the litigation, Plaintiff need only allege a prima facie showing that personal jurisdiction exists, which requires Plaintiff to show that Mr. Renny falls within Ohio's long-arm statute. *Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, No. 2:21-CV-996, 2022 WL 479781, at *4 (S.D. Ohio Feb. 17, 2022).

Ohio Revised Code 2307.382(A)(1) provides that "a court may exercise personal jurisdiction over" an out-of-state-defendant when the relevant cause of action "aris[es] from" that defendant's "transacting" of "any business" within the State. The Ohio Supreme Court has observed that, in the context of this provision, "the term 'transact' ... encompasses 'to carry on business' and 'to have dealings,' and is broader ... than the word 'contract.'" *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994).

A non-resident defendant "need not 'have a physical presence in Ohio' to be transacting business there." *Ohio Valley Bank Comp. v. MetaBank*, No. 2:19-cv-191, 2019 WL 4574528, at *4 (S.D. Ohio Sept. 20, 2019) (citation omitted). Generally, "[c]ourts examine three factors when determining whether a non-resident defendant has transacted business" under Ohio's long-arm

8

statute: (1) whether the non-resident defendant "initiated the dealing," (2) "whether the parties conducted their negotiations or discussions in the forum state, or with terms affecting the forum state," and (3) whether the non-resident defendant manifested a "substantial connection" to Ohio. *Id*. (citations omitted). While these factors are somewhat open-ended, they are cabined by the long-arm statute's "arises from" clause, which the Sixth Circuit has interpreted to entail a "'proximate cause' relationship between" the defendant's business conduct and the plaintiff's cause of action. *See Brunner v. Hampson*, 441 F.3d 457, 466 (6th Cir. 2006).

Plaintiff's Complaint makes a prima facie showing that his claims under the TCPA arise from Mr. Renny's contacts with the state of Ohio while transacting business there. (*See* Compl. ¶ 13.) Mr. Renny had direct dealings in Ohio with Dimension regarding the telemarketing at issue. He signed the contract that formed the basis for the telemarketing relationship between AAP and Dimension, on which he identified himself as the "Managing Member" of AAP. (ECF No. 25-1 at 7.) That contract contains a forum-selection clause which states the parties to the contract "agree and consent to the exclusive jurisdiction of the federal and state courts located in Franklin County, Ohio, for the adjudication of any matters arising under or in connection with the Agreement." (*Id.* ¶ 5.2.) But for Mr. Renny forming this telemarketing contract with Dimension, an Ohio company, as an agent of AAP, the calls constituting Plaintiff's Complaint would not have occurred. Thus, Plaintiff has satisfied his burden.

Mr. Renny further argues that he cannot be held personally liable for AAP's actions since he is not an owner, member or director of the company. (ECF No. 32 at 10.) Section 217 of the TCPA reads as follows:

> "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*."

9

47 U.S.C. § 217 (emphasis added). Other courts have found the "any person" language in § 227 of the TCPA applies to individuals, including corporate officers. *See Williams v. Schanck*, No. 5:15-CV-01434-MHH, 2019 WL 4246570, at *4 (N.D. Ala. Sept. 6, 2019) (citing *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011). Again, Mr. Renny signed the contract that formed the basis for the telemarketing relationship between AAP and Dimension, which identifies him as the "Managing Member." (ECF No. 25-1 at 7.) Plaintiff alleges that Mr. Renny is in charge of AAP's telemarketing and that he is personally liable for the acts alleged in the Complaint pursuant 47 U.S.C. § 217. (Compl. ¶ 26.) Assuming the veracity of the allegations, Plaintiff has stated a claim against Renny.

### 3. Dimension may be vicariously liable for AAP's actions

Dimension argues that Plaintiff has failed to allege a theory of agency that could confer vicarious liability on the company for AAP's actions, thus requiring dismissal. This Court disagrees. The Sixth Circuit has determined "[t]he FCC has interpretive authority over the [TCPA]." *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 466–67 (6th Cir. 2010). In 2013, the FCC ruled that sellers could be vicariously liable for the unlawful calls of third-party telemarketers based on "federal common law principles of agency," including theories of formal agency, apparent authority, and ratification. *See In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6582–84 (2013) ("2013 Order"); *see also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371–72 (6th Cir. 2015) (adopting the 2013 Order).

Plaintiff convincingly argues that he should be permitted discovery on the extent of the relationship between Dimension and AAP. As this Court has noted, the 2013 Order permits consumers to "acquire evidence of relationship between telemarketer and seller through discovery if they are not independently privy to such information" and that such proof need not be presented

at the time of filing. *Charvat v. LE Energy, LLC*, No. 2:19-CV-1325, 2019 WL 3891830, at *3 (S.D. Ohio Aug. 19, 2019) (Morrison, J.). This alone precludes dismissal.

But even if it did not, Plaintiff has adequately alleged the existence of a classical agency relationship between Dimension and AAP. "In TCPA cases, the Sixth Circuit looks to the Restatement of Agency to determine whether vicarious liability should be imposed." *Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016). "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act." Restatement (Third) of Agency § 1.01. The essential element of an agency relationship is the principal's "right to control" the actor. *Id.* at § 1.01 cmt. f. A person may be an agent "although the principal lacks the right to control the full range of the agent's activities, how the agent uses time, or the agent's exercise of professional judgment." *Id.* at § 1.01 cmt. c.

Here, Plaintiff alleges Dimension maintained interim control over AAP's actions and had knowledge that AAP was engaging in pre-recorded telemarketing, including correspondence and other litigation about similarly violative conduct. (Compl. ¶¶ 53–58.) Plaintiff notes the following contract provisions that demonstrate Dimension's control over AAP:

- Requiring AAP to continue to service contracts it sold for Dimension, even after Dimension terminates them. (ECF No. 25-1 ¶ 2.3).
- AAP must specifically comply with the "underwriting, claims, guidelines and other procedures issued by the Company." (*Id.* ¶ 4.2.)
- AAP must use materials in its marketing that Dimension requires. (*Id.*)
- AAP must only sell the contracts "that qualify per [Dimension's] guidelines." (*Id.* ¶ 4.4.)
- AAP is restricted to use "telemarketing or direct marketing scripts approved by [Dimension]." (*Id.*)
- AAP allows Dimension to audit its business practices with any reasonable notice, including up to 1 year after termination of the agreement. (*Id.* ¶ 4.6)

This degree of control raises a plausible inference that an agency relationship existed. Even where, as here, Dimension and AAP expressly disclaimed an agency relationship between the two parties, (ECF No. 25-1 ¶ 5.14), that disclaimer does not negate the existence of an agency relationship, particularly where Plaintiff was unaware of such contractual provision. *Hodell-Natco Indus., Inc. v. SAP Am., Inc.*, 13 F. Supp. 3d 786, 806 n.7 (N.D. Ohio 2014). This Court finds an agency relationship or ratification of one, as plead, is not wholly implausible so as to require dismissal.

### B. Motions to Strike

The Court now turns to Defendants' collective motions to strike class claims. A court may strike class action allegations before a motion for class certification where the complaint demonstrates that the requirements for maintaining a class action cannot be met. *See Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (affirming the district court's striking class allegations prior to discovery where the defect involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering"). However, "courts should exercise caution when striking class action allegations based solely on the pleadings," since it is often more prudent "to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage." *See Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2015 WL 1286347, at *16 (S.D. Ohio Mar. 20, 2015).

Defendants argue that Plaintiff's proposed classes are "facially overbroad" and uncertifiable as improper "fail-safe" classes, that Plaintiff seeks injunctive relief only ancillary to statutory damages, that Plaintiff is atypical because he investigated to find out who was behind the calls—all of which justify striking class claims. Plaintiff argues that such arguments are either incorrect or do not render certification a legal impossibility and, for various reasons, such a

12

determination regarding the class would be premature. This Court finds Plaintiff's arguments persuasive.

First, Plaintiff's class defined as those who have received unlawful calls is not "facially overbroad." Further, Plaintiff correctly notes that *inclusion*—rather than exclusion, as Defendants argue—of language about whether callers in the class had consented to the calls would render Plaintiff's class designations as improper "fail-safe" classes. *See Sauter v. CVS Pharmacy, Inc.*, No. 2:13–CV–846, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (requiring plaintiff to amend class designation to exclude language about consent to be called). Thus, excluding language about consent does not justify striking the class claims.

As to the primacy of injunctive relief, Plaintiff provides affidavits that purport to show illegal telemarketing calls made by AAP continue despite the litigation. (ECF Nos. 28-1, 28-2.) At this stage, the scope of Defendants calling conduct is unknown. Calling records that can be recovered indicating the number of calls made have yet to be produced. As Plaintiff notes, it is simply unknown what discovery will bring and how that will impact the viability and scope of a 23(b)(2) class in comparison to a 23(b)(3) class.

Further, a continuing relationship and the possibility of further violations does weigh on the analysis in a TCPA case when deciding to certify or strike a 23(b)(2) class as it relates to injunctive relief. *See Fisher v. MJ Christensen Jewelers, LLC*, No. 2:15-CV-00358-RFB-NJK, 2018 WL 1175215, at *6 (D. Nev. Mar. 6, 2018) (striking where plaintiff failed to show a likelihood of future violations). Without discovery and full briefing on the class certification, such a determination is premature.

Lastly, Defendants take umbrage with Plaintiff's efforts to identify the callers behind the unlawful pre-recorded messages that form the basis of his complaint. Indeed, Defendants find such

"deceptive" behavior to be atypical of the class. (ECF No. 25 at 16; ECF No. 30 at 13; ECF No. 32 at 17.) Whether the telemarketers in this case found themselves calling not a hapless consumer, but rather someone prepared to feign interest in their product to remove the mask of anonymity behind disembodied robocalls, has no bearing on whether he, and other members of the putative class, received illegal calls for which Defendants are liable. *See Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1194–95 (M.D. Tenn. 2017); *Charvat*, 630 F.3d at 461 ("Phillip Charvat has not been shy in taking on the role of a private attorney general under the [TCPA]."). This Court finds that Plaintiff's conduct, which served to identify the Defendants, has no relevance toward a determination to strike the class claims.

## V. CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Defendant's Motions to Dismiss and Motions to Strike (ECF Nos. 25, 30–32).

**IT IS SO ORDERED.**

**7/7/2022**                                           **s/Edmund A. Sargus, Jr.**
**DATE**                                                    **EDMUND A. SARGUS, JR.**
                                                              **UNITED STATES DISTRICT JUDGE**